WILLIAM G. MALCOLM #129271
MALCOLM ♦ CISNEROS
2112 Business Center Drive
2nd Floor
Irvine, California 92612
Telephone:    (949) 252-9400
Telecopier:   (949) 252-1032
bill@mclaw.org

Counsel for ONEWEST BANK, FSB

**E-FILED 10/8/09**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| SVETLANA ABELYAN, an individual, <br><br> Plaintiff, <br><br> vs. <br><br> ONEWEST BANK, as successor by acquisition of IndyMac Federal Bank, a Delaware Limited Liability Company; COLORADO FEDERAL SAVINGS BANK, a Colorado Corporation; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No.  2:09-CV-07163-CAS-AGR <br><br> **REQUEST FOR JUDICIAL NOTICE RE: MOTION TO DISMISS COMPLAINT AGAINST ONEWEST BANK FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** <br><br> *[Fed. R. Evid.* 201] <br><br> **Date:  November 9, 2009** <br> **Time:  10:00 a.m.** <br> **Ctrm:  5** |

**TO THE HONORABLE CHRISTINA A. SNYDER, UNITED STATES DISTRICT COURT JUDGE, AND PLAINTIFF:**

Defendant ONEWEST BANK, hereby requests the Court to take judicial notice pursuant to Rule 201 of the *Federal Rules of Evidence* of the following documents:

Exhibit 1 – Deed of Trust encumbering the real property located at 2344 Pennerton Drive, Glendale, CA 91206 which was executed by Plaintiff on December 14, 2005 and then recorded on January 10, 2006 in the official records of Los Angeles County, CA as instrument number 060055899.

///

Exhibit 2 – Notice of Default and Election to Sell Under Deed of Trust, issued on March 26, 2009, and recorded in the official records of Los Angeles County, CA on March 27, 2009 as instrument number 09444418.

Exhibit 3 – Notice of Trustee's Sale, issued on August 13, 2009, and recorded that same day in the official records of Los Angeles County, CA as instrument number 091245531.

Dated: October 7, 2009.

MALCOLM ◆ CISNEROS

By: ___/s/ William G. Malcolm___

WILLIAM G. MALCOLM
Attorneys for ONEWEST BANK, FSB

# Exhibit "1"

This page is part of your document - DO NOT DISCARD

**06 0055899**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**01/10/06 AT 08:00am**

**TITLE(S) :**



L E A D    S H E E T

**FEE**

| FEE $ *73* RR |
| DAF $ *25* |
| C-20    *93* |

D.T.T.

NOTIFICATION SENT $4

**CODE
20**

**CODE
19**

**CODE
9____**

Assessor's Identification Number (AIN)
To be completed by Examiner OR Title Company in black ink.

Number of AIN's Shown

THIS FORM IS NOT TO BE DUPLICATED

· INVESTORS TITLE COMPANY



Recording Requested By:
COLORADO FEDERAL SAVINGS BANK

**06 0055899**

And After Recording Return To:
COLORADO FEDERAL SAVINGS BANK
550 W. CIENEGA AVE. SUITE H
SAN DIMAS, CALIFORNIA 91773-2977
Loan Number: 67060

*14091078*

—— [Space Above This Line For Recording Data] ——

# DEED OF TRUST

**MIN:** 1002041-0000067060-4

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** **"Security Instrument"** means this document, which is dated DECEMBER 14, 2005 , together with all Riders to this document.
**(B)** **"Borrower"** is SVETLANA ABELYAN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY

Borrower is the trustor under this Security Instrument.
**(C)** **"Lender"** is COLORADO FEDERAL SAVINGS BANK

Lender is a                                                                                                organized
and existing under the laws of THE UNITED STATES OF AMERICA .
Lender's address is 8400 E. PRENTICE AVE. STE. 545, GREENWOOD VILLAGE, COLORADO 80111

**(D)** **"Trustee"** is INVESTORS TITLE COMPANY
101 E. GLENOAKS BLVD., GLENDALE, CALIFORNIA 91207

**(E)** **"MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the beneficiary under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** **"Note"** means the promissory note signed by Borrower and dated DECEMBER 14, 2005 .
The Note states that Borrower owes Lender SIX HUNDRED FIFTY THOUSAND AND 00/100
                                Dollars (U.S. $ 650,000.00        ) plus interest.

---

3

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JANUARY 1, 2036 .

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | PREPAYMENT RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY of LOS ANGELES :

[Type of Recording Jurisdiction]     [Name of Recording Jurisdiction]

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 2 of 14

DocMagic *eFerms* 800-649-1362
www.docmagic.com

06  0055899

Ca3005.uzd.2.tem

LOT(S) 13 OF TRACT NO. 10232, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN OOK 146 PAGE(S) 60 TO 62 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
A.P.N. #: 5666-008-031

*Exhibit A attached*

which currently has the address of 2344 PENNERTON DRIVE

[Street]

GLENDALE , California 91206 ("Property Address"):

[City]                                         [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                        Page 3 of 14

*DocMagic eForms* 800-649-1362
www.docmagic.com

06  0055899

Cx3005.mzd.3.tem



obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender

Ca3005.mzd.4.tem

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 5 of 14

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

06  0055899

Ca3005.mzd.5.tem

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01      Page 6 of 14      *DocMagic eFormns* 800-649-1362
www.docmagic.com

06 0055899

Cx3005.mzd.6.tem

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01      Page 7 of 14

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

06 0055899

Cs3005.mzd.7.tem

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                             Page 8 of 14

*DocMagic* *eForms* 800-649-1362
www.docmagic.com

06   0055899

Ca3005.nrzd.8.tem

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 9 of 14

*DocMagic eFarms* 800-649-1362
www.docmagic.com

06  0055899

Ca3005.mzd.9.tem

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                Page 10 of 14

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

06  0055899

Ca3005.mzd.10.tem

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The**

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01　　　　　　　　　　　　　Page 11 of 14

*DocMagic eFarms* 800-649-1362
www.docmagic.com

06　0055899

Cu3005.mzd.11.tem



notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                           Page 12 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

06  0055899

Ca3005.mzd.12.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

S. Abelyan _____ (Seal)
SVETLANA ABELYAN            -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

_____ (Seal)
                -Borrower

Witness:                    Witness:

_____             _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 13 of 14          DocMagic eForms 800-649-1362
                                                          www.docmagic.com

Ca3005.mzd.13.tem

06 0055899

State of California          )
                              ) ss.

County of LOS ANGELES    )

On Dec 29. 2005       before me, HOVNAN H. TOVMASYAN

personally appeared SVETLANA ABELYAN

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



HOVNAN H. TOVMASYAN
Commission # 1338596
Notary Public - California
Los Angeles County
My Comm. Expires Jan 10, 2006

_____
NOTARY SIGNATURE

HOVNAN H TOVMASYAN
(Typed Name of Notary)

NOTARY SEAL

06 0055899

MIN: 1002041-0000067060-4          Loan Number: 67060

# ADJUSTABLE RATE RIDER
## (MTA - TWELVE MONTH AVERAGE INDEX - PAYMENT CAPS)

THIS ADJUSTABLE RATE RIDER is made this 14th day of DECEMBER                    ,
2005      , and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned
(the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to COLORADO
FEDERAL SAVINGS BANK
(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

2344 PENNERTON DRIVE, GLENDALE, CALIFORNIA 91206
[Property Address]

**THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE. UNLESS YOU MAKE
VOLUNTARY PREPAYMENTS, THERE MAY BE NEGATIVE AMORTIZATION
DURING THE LIFE OF THE LOAN. AS SUCH, THE PRINCIPAL AMOUNT YOU
WILL BE REQUIRED TO REPAY COULD BE GREATER THAN THE AMOUNT YOU
ORIGINALLY BORROWED. THE INTEREST RATE CAN NEVER EXCEED THE
LIMIT STATED IN THIS NOTE.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**1.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and monthly payments as follows:

**2.   INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will
initially pay interest at a yearly rate of       1.000  %. The interest rate I will pay may change.
The interest rate required by this Section 2 of this Note is the rate I will pay both before and after any
default described in Section 7(B) of this Note.
**(B) Interest Rate Change Dates**
The interest rate I will pay may change on the 1st day of FEBRUARY, 2006           ,
and on that date every month thereafter. Each date on which my interest rate could change is called an
"Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change
Date. The interest rate may change monthly, but the monthly payment will be recalculated in accordance
with Section 3.

06 0055899

**(C) Interest Rate Limit**

My interest rate will never be greater than 9.999 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin (as defined in Section 2(E)).

**(D) The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which will be based upon comparable information. The Note Holder will give me notice of this choice.

**(E) Calculation of Interest Rate Changes**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding THREE AND 900/1000 percentage point(s) ( 3.900 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date.

3. **PAYMENTS**

**(A) Time and Place of Payments**

I will make a payment every month.

I will make my monthly payments on the 1st day of each month beginning on FEBRUARY 1, 2006 . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on JANUARY 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 550 W. CIENEGA AVE. SUITE H, SAN DIMAS, CALIFORNIA 91773-2977 or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first "Payment Change Date" (as defined in Section 3(C)) will be in the amount of U.S. $ 2,090.66 unless adjusted under Section 3(F) of this Note.

**(C) Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the 1st day of FEBRUARY, 2007 , and on that date every 12th months thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment, which the Note Holder will determine in accordance with Section 3(D) or as provided in Section 3(F) or 3(G) below. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due, which causes the Principal balance to increase rather than decrease.)

---

MULTISTATE ADJUSTABLE RATE RIDER
(MTA - TWELVE MONTH AVERAGE INDEX
PAYMENT CAPS) FORM 63 07/01/05          Page 2 of 6

DocMagic *eForms* 800-649-1362
www.docmagic.com

06 0055899

Arr83.ifc.2.tem

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**

At least thirty (30) days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the Maturity Date in substantially equal installments at the interest rate in effect during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless either Section 3(F) or 3(G) below applies, the amount of my new monthly payment effective on a Payment Change Date will not increase by more than 7.5% of my prior Minimum Payment. This 7.5% limitation is called the "Payment Cap." The Payment Cap applies only to the Principal and interest payment and does not apply to any escrow payments Note Holder may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless either Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E) Additions to My Unpaid Principal**

Since my payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my monthly payment could be lesser or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the then current interest rate determined in accordance with Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal may never exceed a maximum amount equal to          110.000 % of the Principal amount I originally borrowed. My unpaid Principal balance could exceed the Maximum Limit (          110.000 % of my original Principal amount) due to Minimum Payments and interest rate increases. In that event, on the date that my paying my minimum monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment until the next Payment Change Date. This means that my monthly payment may change more frequently than annually and the payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal installments at the interest rate effective during the preceding month.

**(G) Required Full Payment**

Regardless of the Payment Cap limitation described in Section 3(D), on the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

66  0055899

**(H) Payment Options**

After the first Interest Rate Change Date, the Note Holder may provide me each month with up to four (4) payment Options, three of which may be greater than the Minimum Payment, and all of which are called "Payment Options." The Payment Options that may be available are:

    **(1) Minimum Payment:** This is the minimum amount Note Holder will accept as my monthly payment. This amount will be provided by Note Holder after the First Interest Rate Change Date and monthly thereafter. The Principal balance will not be decreased by this Payment Option. If the Minimum Payment is not sufficient to cover the amount of interest due, then negative amortization will occur. (Negative amortization occurs when the mortgage payment is smaller than the interest due and that causes the Principal balance to increase rather than decrease.)

    **(2) Interest Only Payment:** This is the amount that would pay only the interest on the Principal at the current interest rate. The Principal balance will not be decreased by this Payment Option.

    **(3) Fully Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full at the Maturity Date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

    **(4) 15 Year Amortized Payment:** This is the amount necessary to pay both the Principal and interest in full within a fifteen (15) year term from the first payment due date in substantially equal payments. This Payment Option is calculated on the assumption that the current interest rate will remain in effect for the remaining term of this Note; however, the current interest rate may in fact change every month.

I may use the Payment Options reflected in H.(2) through H.(4) only if they are greater than the Minimum Payment. If any of these Payment Options results in a payment amount that is less than the Minimum Payment, I must still make the Minimum Payment.

**(I) Failure to Make Adjustments**

If for any reason the Note Holder fails to make an adjustment to the interest rate or payment amount as described in this Note, regardless of any notice requirement, I agree the Note Holder may, upon discovery of such failure, then make the adjustment as if they had been made on time. I also agree not to hold the Note Holder responsible for any damages to me which may result from the Note Holder's failure to make the adjustment and to let the Note Holder, at its option, apply any excess monies which I may have paid to partial Prepayment of unpaid Principal.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

06  0055899

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE ADJUSTABLE RATE RIDER
(MTA - TWELVE MONTH AVERAGE INDEX
PAYMENT CAPS) FORM 83 07/01/05          Page 5 of 6

*DocMagic* 800-649-1362
*www.docmagic.com*

Arr83.ifc 5.tem

G6 0055899

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_S. Abelyan_ _____ (Seal)
SVETLANA ABELYAN          -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

*[Sign Original Only]*

MULTISTATE ADJUSTABLE RATE RIDER
(MTA - TWELVE MONTH AVERAGE INDEX
PAYMENT CAPS)  FORM 83  07/01/05          Page 6 of 6

DocMagic *eForms* 800-649-1362
www.docmagic.com

Arr83.ife.6.tem

06 0055899

**Exhibit A**
**LEGAL DESCRIPTION**

All that certain real property in the County of LOS ANGELES, State of California, described as follows:

LOT(S) 13 OF TRACT NO. 10232, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 146 PAGE(S) 60 TO 62 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN No:  5666-008-031

06  0055899



# PREPAYMENT RIDER

Loan Number: 67060

Date: DECEMBER 14, 2005

Borrower(s): SVETLANA ABELYAN

THIS PREPAYMENT RIDER (the "Rider") is made this 14th day of DECEMBER , 2005 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of COLORADO FEDERAL SAVINGS BANK

("Lender"). The Security Instrument encumbers the Property more specifically described in the Security Instrument and located at

2344 PENNERTON DRIVE, GLENDALE, CALIFORNIA 91206
[Property Address]

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

**5 . BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

---

CALIFORNIA PREPAYMENT RIDER
(CIVIL CODE PROVISION)
12/13/05                                    Page 1 of 2

*DocMagic ℰℱΘrmis 800-649-1362*
*www.docmagic.com*

06 0055899

Capr.ppf.1.tem

27

If within THIRTY-SIX ( 36 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_S. Abelyan_____ (Seal)
SVETLANA ABELYAN            -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

_____ (Seal)
                           -Borrower

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

06 0055899

Capr.ppf.2.tem

# Exhibit "2"



**This page is part of your document - DO NOT DISCARD**

# 20090444418



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/27/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 14.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 14.00 |



**L E A D S H E E T**



200903270230010

00000265096



002032054

**SEQ:**
**08**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

E497009                                            t35

2

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

**Trustee Corps
2112 Business Center Drive,
2nd floor
Irvine, CA 92612**



03/27/2009

*2009044418*

---

[ Space above this line for recorder's use only]

Trustee Sale No. **CA0837428**    Loan No. **3001741721**    Title Order No. **090183736**

## IMPORTANT NOTICE
# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$36,614.45** as of **03/25/2009** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or Mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or Mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the Notice of Trustee's Sale is posted (which may not be earlier than the end of the three-month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**INDYMAC FEDERAL BANK, F.S.B.**
**c/o TRUSTEE CORPS**
**2112 BUSINESS CENTER DRIVE**
**2ND FLOOR**
**IRVINE, CA  92612**
**(949) 252-8300**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

## REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

**NOTICE IS HEREBY GIVEN THAT:** **MTC FINANCIAL, INC. dba TRUSTEE CORPS** is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated **12/14/2005**, executed by **SVETLANA ABELYAN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY**, as Trustor, to secure obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.** as Beneficiary and **COLORADO FEDERAL SAVINGS BANK**, as Lender **Recorded on 01/10/2006 as Document No. 06 0055899** of official records in the Office of the Recorder of **Los Angeles** County, **California**, as more fully described on said Deed of Trust.  Including a Note(s) for the sum of **$650,000.00** that the beneficial interest under said Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: **THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON  12/01/2008 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS FORECLOSURE COSTS AND LEGAL FEES.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to **TRUSTEE CORPS**, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

THE BENEFICIARY OR BENEFICIARY'S AUTHORIZED AGENT HAS COMPLIED WITH CIVIL CODE SECTION 2923.5 AND THE TRUSTEE HEREIN HAS EVIDENCE OF THE FORGOING IN ITS FILE.

DATED: **3/26/09**

**TRUSTEE CORPS, as Agent for INDYMAC FEDERAL BANK, F.S.B.**

By LSI Title Company, as agent

Anselmo Pagkaliwangan

TRUSTEE CORPS IS A DEBT
COLLECTOR.  ANY INFORMATION
OBTAINED WILL BE USED FOR
THAT PURPOSE.

# Exhibit "3"

This page is part of your document - **DO NOT DISCARD**



**20091245531**



Pages:
0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/13/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 18.00 |



**L E A D S H E E T**



200908130250010

00001042250



002261628

**SEQ:**
**22**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

t35

E440070

[RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:]

**Trustee Corps
2112 Business Center Drive,
2nd floor – Suite 201
Irvine, CA 92612**



08/13/2009

*20091245531*

[Space above this line for recorder's use only]

Trustee Sale # CA0837428  Loan# 3001741721    Order # 090183736

# NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED <u>12/14/2005</u>. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On <u>09/02/2009</u> at <u>10:30AM</u>, <u>MTC FINANCIAL INC., dba TRUSTEE CORPS</u> as the duly appointed Substituted Trustee under and pursuant to Deed of Trust <u>Recorded on 01/10/2006 as Document No. 06 0055899</u> of official records in the Office of the Recorder of <u>Los Angeles</u> County, <u>CALIFORNIA</u>, executed by, <u>SVETLANA ABELYAN, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY</u>, as Trustor, <u>COLORADO FEDERAL SAVINGS BANK</u>, as Beneficiary,

WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER FOR CASH (payable at time of sale in lawful money of the United States, by cash a cashier's check drawn by a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in section 5102 of the Financial Code and authorized to do business in this state). **AT: THE WEST SIDE OF THE LOS ANGELES COUNTY COURTHOUSE DIRECTLY FACING NORWALK BLVD., 12720 NORWALK BLVD., NORWALK, CA**

The property heretofore described is being sold "as is". All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State describing the land therein:  APN # 5666-008-031

LOT(S) 13 OF TRACT NO. 10232, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN OOK 146 PAGE(S) 60 TO 62 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

The street address and other common designation, if any, of the real property described above is purported to be:

**2344 PENNERTON DRIVE, GLENDALE, CA 91206**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances, if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is: <u>$749,932.49</u> (estimated amount). **Accrued interest and additional advances, if any, will increase this figure prior to sale.**

## If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.

The Beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located and more than three months have elapsed since such recordation.

2/

**Compliance with California Civil Code Section 2923.52:  The Beneficiary or Beneficiary's agent has indicated that the requirements of California Civil Code Section 2923.52 have been met.  ~~See Exhibit "A"~~ attached hereto and made a part hereof.**

1. Pursuant to California Civil Code 2923.54 the undersigned, on behalf of the beneficiary, loan servicer or authorized agent, declares as follows:
   X Servicer does hereby state that Servicer has obtained from the commissioner a final or temporary order of exemption pursuant to Section 2923.53 that is current and valid on the date of the notice of sale is filed.

2. Timeframe for giving notice of sale specified in subdivision (a) Section 2923.52  ⊔ Does **X**  Does not apply  pursuant to section 2923.52 or 2923.55

Dated: 08/13/2009

MTC FINANCIAL INC. DBA TRUSTEE CORPS, as Successor Trustee

By: ERNIE AGUILAR, TRUSTEE SALES OFFICER

*TRUSTEE CORPS*

2112 BUSINESS CENTER DRIVE, 2ND FLOOR, IRVINE, CA  92612

FOR SALE INFORMATION CONTACT: (714)730-2727, (714) 724-7500, (949) 252-8300

FOR REINSTATEMENT / PAY OFF REQUESTS CONTACT:  (949) 252-8300

SVETLANA ABELYAN    CA0837428

## DECLARATION PURSUANT TO CAL. CIV. CODE SECTION 2923.5(b):

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐   The mortgagee, beneficiary or authorized agent has contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since the borrower was contacted.

☒   The mortgagee, beneficiary or authorized agent has tried with due diligence to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. Thirty days or more have elapsed since these due diligence efforts were completed.

☐   The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

   ☐   the borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

   ☐   the borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

   ☐   the borrower has filed for bankruptcy, and the proceedings have not yet been finalized.

INDYMAC FEDERAL BANK, FSB

Date:   3/20/2009          By: _____

_Marissa Rodriguez_

# PROOF OF SERVICE

I am employed in the County of Orange, State of California. I am over the age of eighteen and not a party to the within action. My business address is 2112 Business Center Drive, Second Floor, Irvine, California 92612.

On October 8, 2009, I served the following document described as:

**REQUEST FOR JUDICIAL NOTICE RE: MOTION TO DISMISS COMPLAINT AGAINST ONEWEST BANK FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

On the following interested parties in this action:

**SEE ATTACHED SERVICE LIST**

[x]     <u>VIA MAIL -- CCP §§ 1013(a); 2015.5</u>: By placing a true copy thereof enclosed in a sealed envelope(s) addressed as above, and placing each for collection and mailing on the date following ordinary business practices. I am readily familiar with my firm's business practice and collection and processing of mail with the United States Postal Service and correspondence placed for collection and mailing would be deposited with the United States Postal Service at Irvine, California, with postage thereon fully prepaid that same day in the ordinary course of business.

[ ]     <u>VIA FACSIMILE</u>: By faxing a true copy thereof to the Facsimile Number indicated above, and obtaining a confirmation receipt that the transmission of the document was successful.

[ ]     <u>VIA OVERNIGHT DELIVERY</u>: By placing a true copy thereof enclosed in a sealed next business day envelope, and placing each for collection and mailing on said date following ordinary business practices.

[ ]     <u>VIA PERSONAL DELIVERY</u>: By placing a true copy thereof enclosed in a sealed next envelope, and causing such envelope to be personally delivered to the address listed on the attached service list. A separate proof of service by the party who delivered the envelope is available upon request.

I declare under penalty of perjury, under the laws of the State of California that the foregoing is true and correct. Executed October 8, 2009, at Irvine, California.

_____
LISA BECKHAM

MDF:/MC44158 Abelyan POS.wpd

Stephen P. Collette, Esq.
John Haubrich, Jr., Esq.
STEPHEN COLLETTE & ASSOCIATES
811 Wilshire Blvd., Suite 1200
Los Angeles, CA 90017